ALVIN T. WELCH, SR.
v.
BURL CAIN, WARDEN LOUISIANA STATE PENITENTIARY AND REVIEW BOARD COMMITTEE
No. 2008 CA 1967
Court of Appeals of Louisiana, First Circuit.
March 27, 2009.
Not Designated for Publication
ALVIN T. WELCH, Sr., Plaintiff/Appellant In Proper Person
ANNETTE R. SENG, DEBRA A. RUTLEDGE, Counsel for Defendant/Appellee Burl Cain
Before: PETTIGREW, McDONALD, AND HUGHES, JJ.
HUGHES, J.
This is an appeal from a judgment of the 19th Judicial District, dismissing petitioner's suit for judicial review. For the reasons that follow, we affirm.

PROCEDURAL HISTORY
This case is before us on appeal a second time. In 1999, Alvin Welch, an inmate with the Department of Public Safety and Corrections, filed a petition for judicial review claiming a violation of his due process rights in connection with his lengthy confinement in extended lockdown.[1] After considering the record and arguments made, the commissioner concluded that petitioner's due process rights were not abridged and recommended dismissal of his claims. The commissioner noted in his report that Mr. Welch's placement in extended lockdown was for a disciplinary infraction, he was not entitled to a due process hearing during the review by the Lockdown Review Board of that placement, and he had failed to assert the type of "atypical substantial hardship" that would otherwise afford the petitioner due process protection. Sand in v. Conner, 515 U.S. 472, 485-486, 115 S.Ct. 2293, 2301, 132 L.Ed.2d. 418 (1995). The 19th JDC rendered judgment on June 21, 2002, accepting the commissioner's recommendation and dismissing petitioner's claims with prejudice. Mr. Welch appealed and this court rendered an unpublished five-judge opinion. We found that "[i]nsofar as Welch's complaints relate to his initial placement in extended lockdown or the procedures in place at the prison for reviewing this classification, we agree with the district court and the commissioner's report that Welch's due process rights were not abridged." Welch v. Cain, XXXX-XXXX (La. App. 1 Cir. 9/20/06)(unpublished opinion). However, we noted that Mr. Welch's complaint not only involved his initial placement in lockdown, but rather focused on his continued detention. Because neither party produced the records that would evidence the board's justification for maintaining Mr. Welch in confinement for such a long time, we remanded the matter back to the district court for the development of additional evidence, including the Lockdown Review Board's written reasons for the denial of Mr. Welch's request for reclassification.
After review of the supplemental documents, the commissioner issued a recommendation wherein he again advised that the petitioner's petition be dismissed, with prejudice, finding that the record "contains sufficient reasons to maintain the petitioner on lockdown status during [the sixteen-year] time period at issue." He noted the number of disciplinary violations the petitioner received during the time that he was in lockdown, his prior escape attempt, his possession of "shims" capable of unlocking restraints, and his use of threats of violence against inmates and prison staff.

DISCUSSION
According to the Lockdown Review Summary sheet dated October 30, 2003 Mr. Welch has been released from extended lockdown. As such, his request for relief in the form of a change in custody status is moot. However, because Mr. Welch also requested damages, we must determine whether the record supports the department's decision to hold him in lockdown for such an extended time. If not, Mr. Welch may still be entitled to a damage award.
The Due Process Clause procedural protections are not triggered by every substantial deprivation imposed by prison authorities. Giles v. Cain, 99-1201, p. 5 (La. App. 1 Cir. 6/23/00), 762 So.2d 734, 738. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. Giles, 99-1201 at p. 5, 762 So.2d at 738 (citing Sandin v. Conner, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed. 418 (1995)). And as we noted in our previous opinion, the United States Supreme Court has repeatedly found that prison officials have broad administrative and discretionary authority over the institutions they manage. Mr. Welch claims that his continued confinement was unjustified and therefore resulted in an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Because the record did not contain the evidence needed to determine whether Welch's continued confinement was justified, we remanded the matter for the necessary additional evidence. The completed record establishes the following:
Mr. Welch was found guilty of climbing the prison wall in an attempt to escape on October 4, 1984, just two years after he originally arrived at the prison. For that attempt he was sentenced to extended lockdown where he remained until February of 1987. On March 30 and again on May 20, 1987, Mr. Welch made written requests to be placed back into lockdown for his own protection. Mr. Welch then wrote a letter to Warden Cain wherein he expressed his mounting anger for Sergeant Sterling, an employee of the prison. Mr. Welch claimed to have been raped in the prison in 1984 and blames the rape on Sergeant Sterling. The letter was forwarded to the Office of Mental Health and Mr. Welch was seen by a psychiatrist on May 28, 1987. At that visit, Mr. Welch expressed his ability to make bombs and electrical "booby" traps, as well as his willingness to use them. He also claimed to be planning an escape. As a result of the letter to the warden coupled with his threats, Mr. Welch was issued a disciplinary report charging him with being a threat to security and an escape risk. Mr. Welch pled guilty to the charges and was again sent to extended lockdown. During this second stay in extended lockdown, Mr. Welch received the following disciplinary incident reports:

1. September 30, 1987 Possession of Contraband
2. February 5, 1988 Possession of Contraband (Shims)
3. April 3, 1988 Disobedience
4. April 28, 1988 Disobedience
5. April 14, 1988 Destruction of Property
6. October 5, 1988 Defiance
7. November 21, 1989 Aggravated Disobedience
8. November 26, 1990 Disobedience
9. December 6, 1990 Aggravated Fighting
10. January 8, 1991 Aggravated Defiance
11. April 21, 1991 Possession of Contraband
12. June 20, 1991 Disobedience
13. October 24, 1991 Disrespect
14. October 24, 1991 Disobedience
15. February 2, 1993 Defiance
16. March 16, 1993 Defiance, Unsanitary Practices
17. June 23, 1995 Threat to Security
18. December 3, 1996 Disobedience
19. February 14, 1997 Possession of Contraband (Shims)
20. May 3, 2003 Fighting

On February 5, 1988, during a routine "shakedown," two homemade handcuff "shims" were found inside two ink pens in Mr. Welch's cell. On January 8, 1991, Mr. Welch used profanity towards a guard and referenced the guard's children. On June 23, 1995, Mr. Welch threatened that "there would be trouble" if Mr. Shelton, another inmate, came by his cell again. Prisoner Shelton was an orderly that served the meal trays. And on February 14, 1997, during a routine inspection of Mr. Welch's cell, two "shims" were found hidden inside a toilet tissue roll. Both "shims" were tested by the officers and did open a set of restraints.
On November 17, 1997 Assistant Warden Leslie Dupont sent Mr. Welch a letter acknowledging his request to be placed back into population. The letter, however, notes that Sergeant Sterling remained employed at the prison. Nevertheless, the letter advised that his case would be reviewed for transfer.
The record thus reveals that Mr. Welch's initial 3 V2 year stay in lockdown for an escape attempt did not deter him from threatening a second escape attempt. He made serious threats of violence against a prison employee as well as against other inmates. Moreover, he threatened the security of the entire prison with his bomb threats and electrical booby trap threats. While in lockdown, he was found in possession of "shims" that were actually capable of opening handcuffs and shackles, threatened another prisoner, and committed a litany of other infractions. Additionally, considering Mr. Welch's threats against Sergeant Sterling, as long as Sergeant Sterling remained employed at the prison, his security was of great concern. Given the prison's wide discretionary authority regarding the housing of its inmates, we cannot say that the record does not support the board's decision to retain Mr. Welch in extended lockdown for the time he remained there. We therefore affirm the judgment of the 19th Judicial District Court, dismissing Mr. Welch's petition. All costs of this appeal are assessed against appellant, Alvin T. Welch, Sr.
AFFIRMED.
NOTES
[1] In his prayer for relief, Mr. Welch requested that the court declare his extended stay in lockdown unconstitutional, order his release to less restrictive housing, and award him punitive damages in the amount of $500,000.00 for mental anguish.